60 F.3d 824
 Util. L. Rep. P 14,052
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SOUTH CAROLINA ELECTRIC & GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
CITY OF ORANGEBURG, SOUTH CAROLINA; CENTRAL ELECTRIC POWER
CORPORATION, INCORPORATED, Intervenors.
 No. 94-2116.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1995.
Decided July 13, 1995.
 
 ARGUED: Belton Townsend Zeigler, SOUTH CAROLINA ELECTRIC & GAS COMPANY, Columbia, SC, for Petitioner.
 Janet Kay Jones, FEDERAL ENERGY REGULATORY COMMISSION, Washington, D.C., for Respondent. James N. Horwood, SPIEGEL & McDIARMID, Washington, DC, for Intervenors. ON BRIEF: James Patrick Hudson, SOUTH CAROLINA ELECTRIC & GAS COMPANY, Columbia, South Carolina, for Petitioner. Susan Tomasky, General Counsel, Jerome M. Feit, Solicitor, FEDERAL ENERGY REGULATORY COMMISSION, Washington, DC, for Respondent. Teresa A. Ferrante, SPIEGEL & MCDIARMID, Washington, DC; James M. Brailsford, III, ROBINSON, McFADDEN & MOORE, P.C., Columbia, South Carolina; A. Hewitt Rose, BRICKFIELD, BURCHETTE & RITTS, P.C., Washington, DC; C. Pinckney Roberts, Senior Vice President and General Counsel, CENTRAL ELECTRIC POWER COOPERATIVE, INC., Columbia, South Carolina, for Intervenors.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, WILKINS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 South Carolina Electric & Gas Company (SCE & G) petitions for review of a decision of the Federal Energy Regulatory Commission (FERC) ordering SCE & G to make refunds to certain of its wholesale customers. See 16 U.S.C.A. Sec. 825l (b) (West 1985). We agree with the FERC that the plain language of the contract between SCE & G and the wholesale customers requires that SCE & G make the refunds, and accordingly we affirm.
 
 I.
 
 2
 In early 1983, SCE & G and its principal wholesale customers entered into an agreement under which SCE & G would supply electricity on specified terms for a period of approximately ten years, to expire on January 1, 1993. This agreement provided that SCE & G would charge its wholesale customers a rate comparable to the rate charged to its large general service customers and that if SCE & G applied for increases in rates for its large general service customers, the rate to the wholesale customers would be adjusted accordingly. The agreement further provided that any refunds ordered for large general service customers would be paid to the wholesale customers as well. The FERC approved the agreement.
 
 
 3
 On January 19, 1993, the South Carolina Public Service Commission ordered SCE & G to issue refunds to its retail customers, including its large general service customers, for a period covered by the agreement. However, because the agreement had expired before the refunds were ordered, SCE & G took the position that the agreement did not mandate refunds to the wholesale customers.
 
 
 4
 The City of Orangeburg, South Carolina and Central Electric Power Cooperative, Inc.--wholesale customers of SCE & G under the agreement--complained to the FERC that SCE & G had failed to comply with the agreement by refusing to issue the refunds. The FERC ordered SCE & G to make the refunds, concluding that the language of the agreement did not support SCE & G's reading. SCE & G now petitions this court for review of that decision.
 
 II.
 
 5
 SCE & G contends that the plain language of the agreement does not obligate it to issue the refunds. It first relies on Paragraph 10 of the agreement, which provides that "until January 1, 1993, [SCE & G] will not maintain or place into effect any rate for its" wholesale customers greater than that applicable to its large general service customers. It also points to Paragraph 18 of the agreement, declaring that the agreement "will terminate as of January 1, 1993." These provisions, SCE & G maintains, dictate a conclusion that the agreement does not mandate that it make refunds to wholesale customers when the refunds for large general service customers were ordered after the termination of the agreement. Further, SCE & G contends that because the agreement does not contain a provision expressly requiring refunds that are not ordered until after this date, the court should not read into the agreement a term that was not bargained for by the parties.
 
 
 6
 We do not find SCE & G's position to be supported by the agreement; instead, we conclude that, read as a whole, the plain language of the agreement requires that the refunds be paid.* The preamble to the agreement provides that the purpose of the agreement was to lower the rates to wholesale customers effective June 29, 1983 and "to cap future wholesale rates until January 1, 1993 at no more than [SCE & G's] retail large General Service Rates." Thus, the expressed intent of the parties to the agreement was to maintain parity of rates during the period encompassed by the agreement. If SCE & G were not required to make the refunds, wholesale customers would pay an effectively higher rate for a period covered by the agreement than that paid by large general service customers receiving a refund. Moreover, we read the provisions to which SCE & G points plainly to mean that during the time frame covered by the agreement the rate for electricity to wholesale customers and large general service customers will be the same. Therefore, we agree with the FERC that the agreement plainly obligates SCE & G to make refunds for the period covered by the agreement irrespective of when the refund is ordered.
 
 AFFIRMED
 
 
 *
 SCE & G asserts that the courts of appeals have reached differing conclusions concerning the standard to be applied in reviewing the FERC's interpretation of a settlement agreement. In Consolidated Gas Supply Corp. v. Federal Energy Regulatory Commission, 745 F.2d 281, 291 (4th Cir.1984), cert. denied, 472 U.S. 1008 (1985), we held that we review the plain meaning of the contract and give effect to that meaning irrespective of the interpretation of the FERC, but if the meaning of the agreement is unclear, we defer to the FERC's interpretation. Here, however, because the plain language of the agreement dictates the meaning found by the FERC, the same conclusion results whether our review is deferential or de novo